IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABERCROMBIE & FITCH STORES,
INC.,

      Plaintiff,

v.

AMERICAN COMMERCIAL
CONSTRUCTION, INC., et al.,

      Defendants.

Case No. 2:08-cv-925

JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This interpleader action is before the Court for consideration of Defendant Timothy Cupps' Motion for Summary Judgment. (Document 40.) For the reasons that follow, Cupps' Motion is **DENIED**.

### I. Background

Plaintiff Abercrombie & Fitch Stores, Inc. ("Abercrombie") admits that it owes certain funds in the amount of $200,521.37 (the "Funds") for work performed by Defendant American Commercial Construction, Inc. ("ACC"). (Am. Compl. ¶ 9.) In addition to ACC, multiple parties have asserted a claim to the Funds, including Defendants Richard J. Annen, Timothy Cupps, Gianarelli, Inc., Paul D. Mendelson, Primary Funding Corporation, and the Internal Revenue Service ("IRS"). On October 7, 2008, Abercrombie filed this interpleader action pursuant to Rule 22, asking the Court to determine Abercrombie's liabilities regarding the Funds, which Abercrombie deposited into the registry of the Court on April 30, 2009.

Defendant Cupps seeks summary judgment as to a portion of the Funds, asserting that he is entitled to $22,293.08 based on a lien which he asserts is superior to those held by the other defendants. The Funds are potentially subject to the following liens relevant to this motion:

(i) On May 27, 2008, Cupps filed with the Secretary of State of California (the "Secretary") a Notice of Judgment Lien listing himself as the judgment creditor and Paul Mendelson as the judgment debtor (the "May 27 Cupps Lien"). (Doc. 40-5.) Cupps listed ACC in the attached Judgment Lien Addendum, but in the wrong box. The Judgment Lien Addendum includes a box in which the filer is to list the "name of first debtor on related judgment lien" and additional boxes where the filer is to list "additional judgment debtor[s]." The first box is for reference purposes, to link the addendum to the original financing statement; only the latter boxes include spaces for additional debtors' addresses. Cupps listed ACC's name in the first box, in which he should have listed Paul Mendelson as the "name of first debtor on related judgment lien." He left the other boxes empty. (*Id.*) Cupps does not dispute that he listed ACC in the "wrong box." (Doc. 47 at 18.)[1]

(ii) On June 2, 2008, the IRS filed with the Secretary a Notice of Federal Tax Lien in the total amount of $805,714.09 listing ACC as the debtor (the "June 2 IRS Lien"). (Doc. 40-6.)

(iii) On October 27, 2008, Cupps filed with the Secretary another Notice of Judgment Lien listing himself as the secured party and ACC as one of three debtors (the "October 27 Cupps Lien"). (Doc. 43-3.)

At issue is whether Cupps holds a lien that is superior to the June 2 IRS Lien.

## II. Summary Judgment Standard

Defendant Cupps has moved for summary judgment under Civil Rule 56. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

---

[1] The record also contains the UCC Filing Acknowledgment sent by the Secretary to Cupps' counsel, confirming that only Paul Mendelson is listed as a debtor and directing that the filer is to review the information for accuracy and notify the Secretary of any errors. (Doc. 40-5.)

2

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## III. Analysis

If a taxpayer fails to pay a tax that is owed and demanded, a federal tax lien in the amount owed is automatically created against all of the taxpayer's property under 26 U.S.C. § 6321. "[O]nce the tax lien has attached to the taxpayer's state-created [property] interests . . . federal law . . . determines the priority of competing liens." *Aquilino v. United States*, 363 U.S. 509, 513–14 (1960). "Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *United States by & ex rel. IRS v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. New Britain*, 347 U.S. 81, 85 (1954)).

A federal tax lien becomes enforceable—and valid for the purpose of "first in time" priority—simply upon the filing of a Notice of Federal Tax Lien. 26 U.S.C. § 6323(a); *McDermott*, 507 U.S. at 449. Pursuant to 26 U.S.C. § 6323(a), "the filing of notice renders the

3

federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property." *McDermott*, 507 U.S. at 453.[2]

Competing state-created liens, on the other hand, are not afforded the benefits of § 6323(a). *Id.*, 507 U.S. at 454 n.7. To have priority over a federal tax lien, a competing lien must both satisfy state law and "meet the federal standard of 'choateness.'" *Redondo Constr. Corp. v. United States*, 157 F.3d 1060, 1063 (6th Cir. 1998); *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000).

First, "to create a state lien, a judgment creditor must . . . do that which is required under state law to cause a judgment to attach to property." *Redondo*, 157 F.3d at 1063. Under California law, "minor errors in a UCC-1 financing statement do not affect the effectiveness of the financing statement unless the errors render the document seriously misleading to other creditors." *Corona Fruits & Veggies, Inc. v. Frozsun Foods, Inc.*, 48 Cal. Rptr. 3d 868, 870 (Cal. Ct. App. 2006); Cal. Com. Code § 9506(a). Because "[t]he purpose of a financing statement is to give fair warning to third parties," *Meyer v. Capital Crossing Bank*, 303 B.R. 201, 204 (Bankr. N.D. Cal. 2003), a financing statement is seriously misleading if it fails to "indicate to an interested third party the possible existence of prior encumbrances on the collateral." *In re Pacific Trencher & Equip., Inc.*, 735 F.2d 362, 364 (9th Cir. 1984) (applying California law) (quoting *In re Munger*, 495 F.2d 511, 512 (9th Cir. 1974)). "[A] financing statement that fails sufficiently to provide the name of the debtor . . . is seriously misleading" unless "a search of the records of the filing office under the debtor's correct name . . . would disclose [the] financing statement." Cal. Com. Code § 9506(b), (c). For a financing statement to be seriously

---

[2] "The Supreme Court has broadly interpreted section 6321 to include not only the property . . . owned by the delinquent taxpayer, but also property held by . . . [an] alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977) (taxpayer's alter ego not entitled to separate notice of tax lien)).

4

misleading, it is not necessary for a creditor actually to have been misled; the relevant question is whether "a potential creditor could have been misled." *Pacific Trencher*, 735 F.2d 364.

Second, under federal law, "[a] state-created lien is choate only when there is nothing more to be done,' i.e., 'when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *Blachy*, 221 F.3d at 905 (citing *United States v. City of New Britain*, 347 U.S. 81, 84 (1954)); *McDermott*, 507 U.S. at 449–50.

The May 27 Cupps Lien does not meet these requirements because Cupps failed to "do that which is required under state law to cause a judgment to attach to property." *Redondo*, 157 F.3d at 1063. By listing ACC's name in the wrong box, Cupps committed an error that rendered his filing "seriously misleading" to other creditors of ACC. Because Cupps' filing fails to indicate to an interested third party the possible existence of his lien against ACC, and a search of the filing office's records under ACC's name does not disclose Cupps' filing (Doc. 43-3), the filing is not effective against ACC under California law for the purpose of "first in time" priority. Because the May 27 Cupps Lien does not meet the requirements of California law, "the choateness inquiry does not come into play." *Redondo*, 157 F.3d at 1063 n.4.

Cupps maintains that the May 27 Cupps Lien is valid against ACC as a result of the judgment issued on May 14, 2008 by the Superior Court of the State of California for the County of San Diego (the "California Judgment"), finding that Mendelson was the alter ego of ACC.[3] (Doc. 47 at 33–49.) While Mendelson and ACC may be alter egos, that status would not avoid the seriously misleading nature of Cupps' financing statement. In *Corona Fruits & Veggies*, a California court of appeals held that a financing statement was seriously misleading because it

---

[3] The California Judgment states that "the court found that . . . Mendelson is the alter ego of . . . ACC, but since the . . . jury found Mendelson to be individually liable to Cupps, the issue of Mendelson's liability based on alter ego is academic." (Mot. Ex. B at Doc. 40-4.) The court awarded separate judgments against each of Mendelson and ACC. (*Id.*)

5

listed the debtor's name as "Armando Munoz" where the debtor went by the last name of "Munoz" but his legal name was "Armando Munoz Juarez." *Corona Fruits & Veggies*, 48 Cal. Rptr. 3d at 321–24. Even though "Mr. Munoz" and "Mr. Juarez" were the same person, California law required the correct legal name to be listed on the financing statement in order to put third parties on notice of the security interest. *Id.*, 48 Cal. Rptr. 3d at 324. The same rule applies here, despite any alter ego status that may exist between Mendelson and ACC.

Although Cupps points to several cases, he cites no controlling authority to support a finding that the May 27 Cupps Lien against Mendelson is a perfected lien against ACC under California law. (Doc. 64-1 at 3–4 (citing *Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.*, 29 Cal. App. 4th 1828, 1840–41 (Cal. Ct. App. 1994); *Hennessey's Tavern v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (Cal. Ct. App. 1988); *Paul v. Palm Springs Homes, Inc.*, 192 Cal. App. 2d 858, 862–64 (Cal. Ct. App. 1961); *Taylor v. Newton*, 117 Cal. App. 2d 752, 757–59 (Cal. Ct. App. 1953); *United States v. Scherping*, 187 F.3d 796, 803 (8th Cir. 1999); *F.P.P. Enters. v. United States*, 830 F.2d 114, 118 (8th Cir. 1987)).) Most of these cases relate to the existence of liability based on an alter ego finding, but they do not stand for the proposition that a lien perfected against one entity is automatically perfected as to that entity's alter ego.

Cupps also devotes a significant portion of his memoranda to the discussion of reverse corporate piercing, asserting that it would be an appropriate equitable remedy in this case. (Doc. 47 at 33–49.) The Court need not reach the issue of whether ACC is liable for Mendelson's debt under such a theory because ACC's liability, by itself, would not overcome the deficiency in the May 27 Cupps Lien as to ACC. As discussed above, that lien is not perfected against ACC under California law because the filing is seriously misleading.

The parties do not dispute that the June 2 IRS Lien became valid upon filing. Because the May 27 Cupps Lien does not satisfy the requirements of California law as to ACC, and the

6

October 27 Cupps Lien also fails to overcome the earlier-filed June 2 IRS Lien under the "first in time" rule, the June 2 IRS Lien has first priority. Because Cupps is not entitled to priority in the distribution of the Funds, his Motion must be denied.

## V. Conclusion

For the reasons discussed above, the Court **DENIES** Defendant Cupps' Motion for Summary Judgment. (Document 40.) This Order also disposes of Defendant Cupps' Motion for Court to Rule on Motion for Summary Judgment. (Document 74.)

**IT IS SO ORDERED.**

3-18-2010
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**